IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

MALLORY C. JONES and )
TROY A. MOSES, )
)    CASE NO.  17CV00003-JRH-BKE
PLAINTIFFS, )
)
VS. )
)
RAMONE LAMKIN, Individually, and )
In his official capacity as Marshal of the )
Civil and Magistrate Court of )
Richmond County, Georgia, and )
AUGUSTA-RICHMOND COUNTY, )
GEORGIA, )
)
DEFENDANTS )

## BRIEF IN OPPOSITION
## TO DEFENDANT AUGUSTA, GEORGIA'S MOTION TO DISMISS

### Preliminary Statement

Defendant Augusta, Georgia's ("Defendant Augusta, Georgia") brief in support of

its motion to dismiss is based upon the misunderstanding and misapplication of the Constitution

of the State of Georgia and Special Act No. 882 enacted by the Georgia General Assembly. Special

Act No. 882 amended and restated the act creating the Civil Court of Richmond County, Georgia.

(Ga. Laws 1974, 2410).  For the convenience of the Court, a copy of Special Act No. 882 is

attached hereto as Exhibit "A".  (That court is now known as the Civil and Magistrate Court of

Richmond County, with the same judges, clerks, and marshals, who serve in their capacities in

both the Civil Court of Richmond County as a court of record with civil jurisdiction up to $45,000

and trial by jury and in the Magistrate Court which is not a court of record.)  Special Act 882

struck the August 28, 1931 act creating the Municipal Court of the City of Augusta (Ga. Laws

1931, p. 270) in its entirety.  Defendant Augusta, Georgia's premise is based upon Section 11 of the 1974 Act, which provided that all powers of authority imposed by law upon and conferred upon the Clerk of the Superior Court of Richmond County, Georgia and the Sheriff of Richmond County, Georgia, shall be obligatory upon and shall be vested in the Clerk and Sheriff of said Civil Court and lawful deputies, respectfully, and shall be concurrent with and co-existent with said Clerk of Superior Court and Sheriff of Richmond County, Georgia.  That Act was passed prior to the Constitution of 1983 and is a Special Act – not an act of general application.

Subsequent to that act, Georgia reenacted the Constitution of 1983, which struck a blow for judicial uniformity by providing that the judicial power of the State would be vested in five (5) types of trial level courts:

       (a)     Magistrate;

       (b)     Probate;

       (c)     Juvenile;

       (d)     State; and

       (e)     Superior.

The 1983 Constitution also provided for uniform jurisdiction and Rules of Practice and Procedures for each of these courts, except Probate Court.  *See,* Ga. Const. art. VI, § I, para. I; Ga. Const. art. III, § III, para. I; State v. Boatright, 256 Ga. 23, 342 S.E. 2d 674 (1986).  In enacting this constitutional provision creating some uniformity, the Civil Courts of Bibb County and Richmond County, Georgia were exempted from consolidation and have special jurisdictional and procedural provisions pursuant to local legislation.  (Ga. Const., art. VI, § X, para. I).

Subsequent to the enactment of this Special Act, the Georgia Constitution of 1983, consistent with previous law, specifically provided that the Clerk of the Superior Court, the Judges

of Probate Court, the Sheriff and the Tax Commissioner, <u>would be constitutional officers</u> – that is, officers created by the Constitution which gave them certain independent status that the current Marshal of the Civil Court of Richmond County, Georgia does not possess. *See,* Ga. Const., art. IX, § I, para. III; *see also,* <u>Board of Commissioners of Dougherty County v. Saba</u>, 278 Ga. 176, 598 S.E. 2d, 437 (2004), and <u>Board of Commissioners of Spalding County v. Stewart</u>, 284 Ga. 573, 668 S.E. 2d 644 (2008).

Subsequent special legislation relating to the Civil Court of Richmond County, Georgia changed its name. That special legislation also provided that the Marshal was to be elected by a non-partisan election as opposed to being selected by the Chief Judge. (*See,* Ga. Laws 2007, pp. 35-41). Although Georgia did amend Section 11 to provide that the Marshal of the Civil Court should also have the power to enforce ordinances relating to abandoned motor vehicles, littering of private or public property and other local ordinances (Ga. Laws 2000, p. 4132), there has never been any general legislation or constitutional amendment passed by the Georgia General Assembly in any way giving the Marshal of the Civil Court of Richmond County, Georgia the same constitutional standing that the Sheriffs of each of the counties possess.

More importantly, when an issue arose regarding the effect of the 1974 legislation depriving Justices of the Peace to hold courts of inquiry, the Supreme Court of Georgia in <u>Granger v. The State</u>, 235 Ga. 681, 221 S.E. 2d 451 (1975), specifically pointed out that the Constitution then in effect vested certain powers in certain named courts, including Justices of the Peace, and that a change in the law via Special Act had no effect of depriving Justices of the Peace in Richmond County, Georgia of jurisdiction to hold courts of inquiry contrary to the general law. *See also,* Ga. Const., art. III, § VI, para. IV. This principle cannot be used to give the Marshal the same powers as the Sheriff, who is an independent constitutional officer and the chief law

3

enforcement officer in Richmond County. Anything to the contrary in the Augusta ordinances is preempted. Gebrekidan v. City of Clarkston, 298 Ga. 651, 784 S.E. 2d 373 (2016).

In Augusta, Georgia, the Civil and Magistrate Courts have been combined so that the Judges of the Civil Court of Richmond County, Georgia are also the Magistrates of Richmond County, Georgia. Under O.C.G.A. § 15-10-1 et seq., a provision is made for the appointment of Constables, with a specific provision that the county may employ Marshals to perform the duties of Constables. O.C.G.A. § 15-10-100(c.1)(1). In Augusta, Georgia, the office of Marshal is now a non-partisan elected position. The Marshal is also the Constable of the Magistrate Court. The Marshal does more than serve process and dispossessory warrants, but also is involved in public building security and airport security. Unlike the Sheriff, the Marshal is not a constitutional officer and is no more than an elected department head of Augusta, Georgia. The Mayor is also an elected office and the employees of the Mayor's office are no different than the employees of the Marshal's office. The Marshal and his employees work for Augusta, Georgia and he does not possess the independence of the four (4) constitutional officers in Georgia.

### Plaintiffs' Complaint

In their complaint, Plaintiffs Jones and Moses allege that that they have worked for the Marshal's Department of the Civil and Magistrate Court of Richmond County, Georgia for 24 years and 8 years, respectively. The Plaintiffs state that the long-term Marshal of the Civil and Magistrate Court, Steve Smith, was challenged in the 2016 election losing to Defendant Lamkin. Plaintiffs allege in paragraph 6 of their complaint that, prior to the election, they exercised their First Amendment rights of Freedom of Speech and Freedom of Association to support Marshal Smith. They state that at all times the positions occupied by them did not require personal or political loyalty to the holder of that office, did not involve any policymaking functions, and did

4

not involve a close working relationship with the Marshal, but only involved the performance of normal duties of various employees of the Marshal's Department. (*See*, Plaintiffs' complaint, ¶ 7). Plaintiffs allege that, as a direct result of their exercising their First Amendment rights, Defendant Lamkin terminated them. Plaintiffs allege that Defendant Lamkin made these decisions not as an arm of the state and he had was no Eleventh Amendment immunity. (*See*, Plaintiffs' complaint, ¶¶ 10, 11, and 12). Plaintiffs have alleged that Defendant Augusta, Georgia has allowed Defendant Lamkin to take the actions to terminate them as employees for exercising their First Amendment rights. Plaintiffs further allege that Defendant Augusta, Georgia controls the budget and has the power to require that this elected official not take action to punish these employees for exercising their First Amendment rights. (*See*, Plaintiffs' complaint, ¶¶ 17, 18, and 19). These terminations occurred before Defendant Lamkin took office and became effective on January 1, 2017.

## **Argument and Citations of Authority**

1.  This Court should accept as true all well-pled allegations and should review the complaint in the light most favorable to the Plaintiffs. American Dental Association v. Signal Corps, 605 F.3d 1253, 1288 (11th Cir. 2010); Castro v. Secretary of Homeland Security, 472 F.3d 1334, 1336 (11th Cir. 2006).

Dismissal is appropriate only if it appears to a certainty that a plaintiff would not be entitled to relief under any state of facts which may be proven in support of a claim. Mills v. Foremost Insurance Company, 511 F.3d 1300, 1303 (11th Cir. 2008).

Defendant Lamkin has already answered Plaintiffs' complaint and has admitted to certain allegations. He has admitted that during the election cycle of 2016 the long-term Marshal of the Civil and Magistrate Court, Mr. Steve Smith, was challenged and lost to Defendant Lamkin

that the Plaintiffs openly supported the re-election of the former Marshal, Steve Smith, and did not support the election of Defendant Lamkin; that those facts were known to Defendant Lamkin; that after the election and prior to taking office, Defendant Lamkin notified the Plaintiffs by letters by they were being relieved of their duties effective January 1, 2017. (*See,* Plaintiffs' complaint, ¶¶ 5, 8, 9 and 11 and Defendant Lamkin's answers thereto).

Here, it Plaintiffs' position that they were employees of Augusta, Georgia; that they did not work solely at the pleasure of the Marshal; and that while Defendant Augusta, Georgia is not liable under any respondent superior theory, Defendant Augusta, Georgia is liable because the injury and the loss of Plaintiffs' jobs were inflicted because of Defendant Augusta, Georgia's custom and policy of not protecting the political speech of the employees of the Marshal's Department and its taking the position that the Plaintiffs worked for the Marshal, as if they were employees of a constitutional officer who thus had the authority terminate their employment.

2.    <u>Augusta-Richmond County does not lack authority and control over the Marshal's Department</u>.

In support of their position that Defendant Augusta, Georgia has no control over the employees working for the Marshal, Defendants argue that the Marshal has the same authority of a constitutional officer, i.e., the Sheriff, not as a Constable under the Magistrate Code set forth in O.C.G.A. § 15-10-100, or under the Special Act creating the Civil and Magistrate Court of Richmond County, Georgia. As set forth in Plaintiffs' Preliminary Statement above, Marshals or Constables of the Civil and Magistrate Court of Augusta-Richmond County, Georgia are not Constitutional Officers. In support of its position, Defendant Augusta, Georgia cites the provision of the Georgia Code relating to sheriffs, O.C.G.A. § 15-16-23. That Code section is not applicable to Defendant Lamkin or his office. Under previous constitutions, it has been held that Deputy

Sheriffs work for the Sheriff, not the county. <u>Board of Commissioners of Richmond County v. Whittle</u>, 180 Ga. 166, 178 S.E. 534 (1935). There is no authority holding that employees of the Marshal do not work for Defendant Augusta, Georgia.

Defendant Augusta, Georgia cites <u>Wayne County v. Herrin</u>, 210 Ga. App. 747, 437 S.E. 2d 793 (1993), a case in which the Wayne County Sheriff agreed to allow the individual positions in his office to be subject to the county personnel system. That case stands for the proposition that in Georgia a Constitutional Officer has employees working for the officer – not the county. However, the Marshal is not of the same position as the Sheriff of Richmond County, Georgia. Defendant Augusta, Georgia also cites <u>Warren v. Walton</u>, 231 Ga. 495, 202 S.E. 2d 405 (1973), in which the constitutionally-elected Sheriff of Hancock County, Georgia brought a *mandamus* action against the County Commissioners seeking to require that the county furnish the Sheriff with two radio equipped automobiles for his use and the performance of his official duties. That case, as well as the cases cited in the Preliminary Statement above, involve sheriffs, who as constitutional officers have control of their office. Defendant Lamkin does not have that status. The Plaintiffs do not dispute the fact that employees of a county's Constitutional Officer are considered employees of that elected official, not employees of the county. The distinguishing fact here, as set forth in the Preliminary Statement above, is that Defendant Lamkin is not a Constitutional Officer. On page 4, Defendant Augusta, Georgia cites <u>Boswell v. Brandon</u>, 274 Ga. 50, 549 S.E. 2d 100 (2001), for the proposition that employees of a clerk of the Superior Court are employees of the clerk, not employees of the county. The Clerk of Superior Court, like the Sheriff, is one of four (4) Constitutional Officers in Georgia – those being, the Clerk of Superior Court, the Sheriff, the Tax Commissioner, and Probate Judge. Defendant Lamkin does not fall into this same category.

Defendant Augusta, Georgia then cites <u>Grech v. Clayton County, Georgia</u>, 335 F.3d 1326 (11th Cir. 2003), in which the Eleventh Circuit held that the county could not be liable for actions of the Sheriff. This case is distinguishable because it involves a sheriff, a constitutionally elected officer – not a marshal, who is not. The next case cited by Defendant Augusta, Georgia is <u>Turquitt v. Jefferson County, Alabama</u>, 137 F.3d 1285, 1292 (11th Cir. 1998), a case involving an Alabama jail where under Alabama law, the sheriff, acting as a state official, was supervising inmates and otherwise operating a jail. The Eleventh Circuit held that the county could not be held liable because the Sheriff was not an official of the local government. Defendant Augusta, Georgia then cites <u>Duffey v. Bryant</u>, 950 F.Supp. 1168, 1174 (N.D. Ga. 1997). There, the court pointed out that under Georgia law a county and its commission are without authority over the sheriff or his deputies. Plaintiffs agree. The case at hand does not involve a constitutionally elected sheriff, but merely an elected department head of Augusta-Richmond County, Georgia. Defendant Augusta, Georgia has also cited this Court's decision in <u>Smith v. Augusta-Richmond County</u>, 2012 WL1355575 (S.D. Ga. 2012) (CV110126). Again, that case related to actions taken by deputies employed by the Richmond County Sheriff's Office and this Court pointed out that in Georgia the sheriff is a <u>separately constitutionally protected entity independent from a county</u>. This is not an action in which a constitutional officer terminated the Plaintiff and the Plaintiffs are seeking to hold the county liable, but is an action in which a department head terminated Plaintiffs because of their protected First Amendment activities and Defendant Augusta, Georgia refused to enforce its own Personnel and Policies Procedures Manual that should provide protection for political activities outside of work. *See,* excerpt from Augusta, Georgia Policies and Procedures Manual, Sec. 800.035b, a copy of which is attached hereto as Exhibit "B", which excerpt is applicable to

all employees except those excluded by Ordinance 1-7-11 (a copy of which is attached hereto as Exhibit "C").

Defendant Augusta, Georgia has taken the position that its personnel manual prohibits such terminations as a result of one's exercising his First Amendment right of free speech. By adopting this custom or practice, Defendant Augusta, Georgia can be held as a defendant. Fernandez v. The School Board of Miami-Dade County, Florida, 2016 WL 4417632 (S.D. Fla. 2016).

In Finkel v. Branti, 457 F.Supp. 1284 (S.D. NY 1978), assistant public defenders employed by Lockland County, New York brought a civil rights suit challenging their dismissal. The district court found that the assistant public defenders were non-policymaking, non-confidential government employees who were satisfactorily performing their duties, and that the public defenders' attempt to replace them on purely political grounds violated the First and Fourteenth Amendments. The Second Circuit affirmed at 598 F.2d 609 (2nd Cir. 1979) and the United States Supreme Court affirmed in Branti v. Finkel, 445 U.S. 507, 100 S. Ct. 1287 (1980) holding that if the First Amendment protects a public employee from discharge based on what he said, that it also must protect him from discharge based on what he believes. Prior to Branti v. Finkel, *supra*, the Supreme Court ruled in Elrod v. Burns, 427 U.S. 347, 96 S. Ct. 2673 (1976), that a newly elected county sheriff could not issue wide-range termination for employees who were not sponsored by or affiliated with his political party. In the case at hand, Defendant Augusta, Georgia has allowed the Marshal to terminate its employees because the exercised their First Amendment rights.

because of those employees' political activities in that those activities which are protected under the First Amendment to the United States. Liability against Defendant Augusta, Georgia is based on its failure to enforce its own policies and its failure to recognize that employees of the Marshal's office are employees of Defendant Augusta, Georgia.

    4.    <u>Employees such as Jones and Moses who are not involved in policymaking decisions for the department, but are merely long-term employees, cannot be terminated because of their exercised First Amendment rights of Freedom of Speech and Freedom of Association.</u>

In <u>Elrod v. Burns</u>, 427 U.S. 347, 96 S. Ct. 2673 (1976), the Supreme Court held that employees such as Jones and Moses cannot be terminated because of their exercise of their First Amendment rights. Subsequent thereto, in <u>Rutan v. Republican Party of Illinois</u>, 497 U.S. 62, 110 S. Ct. 2729 (1990), the Supreme Court held that demotions, transfers and recalls based upon political affiliations are an infringement upon a public employee's First Amendment rights. Subsequent there to is the 1996 written opinion of Justice Kennedy in <u>O'Hara Truck Service v. City of Northlake</u>, 518 U.S. 712, 116 S. Ct. 2353 (1996), in which Chief Justice Rehnquist and Justices Stevens, O'Connor, Souter, Ginsburg, joined. There, the Supreme Court held that terminating an independent contractor for refusing to support a political party could violate the First Amendment. In the case at hand, Plaintiffs cannot be terminated for failing to support Defendant Lamkin in an election.

On page 6 of its brief, Defendant Augusta, Georgia cites <u>Terry v. Cook</u>, 866 F.2d 373 (1989), for the proposition that a sheriff could replace his employees. In <u>Jones v. Dodson</u>, 727 F.2d 1329 at 1334 (4th Cir. 1984), the Fourth Circuit court cited <u>Elrod v. Burns</u>, *supra*, explained its meaning, and said that the following basic principles apply:

(a)    The root principle itself is that a state cannot condition public employment on a basis that infringes the employee's constitutionally protected interest of freedom of expression.

(b)    Under the general principle, a public employee may not be discharged for expression of ideas of any matter of legitimate public concern.

(c)    Neither may a public employee be discharged solely because of the employee's political party affiliation unless the employer can show that affiliation with the employer's party is essential to the employee's effectiveness in carrying out the responsibilities of the position held.

(d)    Notwithstanding proof or concession that a public employee's discharge was based at least in part upon overtly expressive conduct, party affiliation, or both, an employer may not avoid liability for violation of protective First Amendment rights by proving that the discharge would have been made in any event for reasons unrelated to any exercise of protected First Amendment rights….the burden to prove this avoidance defense is upon the public officer.  In Terry v. Cook, *supra*, the court went on to hold that, as to clerks, investigators, dispatchers, jailors, and process servers:

> It has not been established that loyalty to an individual sheriff is an appropriate requirement for effective job performance for the remaining positions of clerk, investigator, dispatcher, jailer, and process server. This is a determination that depends upon the actual responsibilities of each position and the relationship of each to the sheriff. Indeed, in *Branti*, the Court acknowledged that the duties of the employees, who included a process server, bailiff, and security guard, were not of

such character that party affiliation was an acceptable requirement for employment…

*Id.* at 377.

In <u>Gordon v. Cochran</u>, 116 F.3d 1438 (11th Cir. 1997), the Eleventh Circuit pointed out that the employer bears the burden of establishing that the discharged employee's position fell within the political patronage exception and held that being an administrator or supervisor is not sufficient, citing <u>Elrod</u>, *supra*, at pp.367-368.

### Conclusion

As stated above, Defendant Augusta, Georgia is and can be held responsible for the actions of the Marshal of the Civil and Magistrate Court. The Marshal is not a constitutional officer, but is nothing but an elected department head. Defendant Augusta, Georgia should enforce policies that specifically provide that department heads cannot interfere with an employee's First Amendment right of freedom of expression, particularly when it relates to an employees' personal political stance.

At this stage of the proceedings, Plaintiffs respectfully request this Court deny the motion filed by Defendant Augusta, Georgia to dismiss this action.

This _____ day of February, 2017.

*s/ John B. Long, Esq.*
JOHN B. LONG, ESQ.
Georgia State Bar No. 457200
Attorney for Plaintiffs
TUCKER LONG, P.C.
P. O. Box 2426
453 Greene Street (30901)
Augusta, GA 30903

13

Telephone: (706) 722-0771
Facsimile: (706) 722-7028
Email:  jlong@tuckerlong.com

# CITY OF AUGUSTA—MUNICIPAL COURT—PROVISIONS CLARIFIED, ETC.

No. 882 (House Bill No. 1812)

An Act to amend an Act abolishing the justice courts and the office of justice of the peace and notary public ex officio justice of the peace and the office of constable in the City of Augusta, Georgia, and creating in lieu thereof a Municipal Court in and for the City of Augusta, approved August 28, 1931 (Ga. L. 1931, p. 270), as amended, so as to revise, consolidate and clarify all the laws establishing, concerning and relating to the Municipal Court, City of Augusta, Georgia, in and for the County of Richmond; to provide for the election of judges thereof; to provide for the creation of the office of Associate Judge; to provide for their compensation, define their qualifications, powers and duties; to provide for the appointment of all other officers; to increase the jurisdiction of said court; to establish and revise the rules of procedure; to provide for trial by jury of six members; to provide for destruction of old records; to repeal conflicting laws; and for other purposes.

Be it enacted by the General Assembly of Georgia:

**Section 1.** An Act abolishing the justice courts and the office of justice of the peace and notary public ex officio justice of the peace and the office of constable in the City of Augusta, Georgia, and creating in lieu thereof a Municipal Court in and for the City of Augusta, approved August 28, 1931 (Ga. L. 1931, p. 270), as amended, is hereby amended by striking in their entirety sections 1 through 41 and substituting in lieu thereof the following:

"Section 1. That a Civil Court of Richmond County is hereby established and created, and that from and after January 1, 1933, and the election and qualification of the officers of said Civil Court of Richmond County, Georgia, no justice court, or justice of the peace or notary public ex officio justice of the peace or constable shall have or exercise any jurisdiction civil or criminal, within the city limits

of Augusta, Georgia, as they now or may be hereafter defined.

"Section 2. The Civil Court, Richmond County, Georgia, shall have concurrent jurisdiction within the County of Richmond, with the Superior Court and other courts of said county, to try and dispose of all civil cases or proceedings of whatever nature, whether arising ex contractu or ex delicto, under the common law, or by statute in which the principal sum sworn to or claimed to be due, or the value of the property in dispute does not exceed ten thousand ($10,000.00) dollars, and of which jurisdiction is not vested by the Constitution and laws of Georgia exclusively in another or other courts. The criminal jurisdiction of said Civil Court shall not exceed the jurisdiction now or hereafter vested by law in the justice courts of this State, but such jurisdiction shall extend over the entire County of Richmond. Whenever the words 'principal amount sworn to or claimed to be due' are used in this Act, it shall be held to mean the principal amount sued for, or the value of the property sued for or claimed, or the alleged amount of liens sought to be enforced by the defendant, set-off, or counterclaim, exclusively of and not computing interest, hire, attorney's fees and costs. Provided, however, should the amount of a counterclaim or set-off asserted by defendant exceed the jurisdiction limit of this court, the clerk shall within five days from date of filing said counterclaim or set-off of transfer all pleadings in the subject suit to the Clerk of the Superior Court of Richmond County, Georgia, who shall docket same and thereafter the litigation shall be subject to existing Superior Court rules and jurisdiction.

"Section 3. The Civil Court of Richmond County, Georgia, shall have jurisdiction to try and determine all process and warrants and dispossessory warrants and proceedings to evict intruders, and to dispossess and remove tenants holding over. The plaintiff in such proceedings shall have the right to direct the return of the same as to the issues to be tried thereon to either the Civil Court of Richmond County, Georgia, or to the Superior Court of Richmond County, Georgia, provided such election is stated in the warrant or

*Jurisdiction.*

EXHIBIT A

affidavit or counter-affidavit at the time the same if filed, and if no such election is so stated said warrant or affidavit shall be returnable to the Civil Court of Richmond County, Georgia. And in the event that said warrant should be contested and triable in the Civil Court of Richmond County, Georgia, all issues of law and fact formed thereon by counter-affidavit or otherwise shall be tried by the judge of said court without the intervention of jury, unless a demand for jury trial is filed at the time of filing said warrant, affidavit, counter-affidavit or pleadings thereon, either by the plaintiff or defendant. Failure to file such a demand for trial by jury shall be deemed as a waiver of a jury trial.

"Section 4. Be it further enacted by the authority aforesaid, that there shall be a judge of said Civil Court, who shall be known as the chief judge, whose term of office shall be four years and who shall be elected by the qualified voters of the County of Richmond quadrennially at the regular State election for the election of members of the General Assembly and in the same year in which presidential elections are held. Provided that the chief judge of said court first elected under the terms of this Act shall be elected on the third Wednesday in December, 1932, at the election to be held for that purpose. Provided further that all qualified voters of the county resident in and/or outside of the City of Augusta shall be permitted to vote in the voting precinct in which they live in the same manner as they vote for other candidates for other State and/or county officers.

"Section 5. Be it further enacted by the authority aforesaid, that the chief judge of said Civil Court shall be commissioned by the Governor and before entering upon the duties of his office shall take the same oath required by law of Superior Court Judges; that any person who shall be elected chief judge, or appointed clerk or sheriff of said Civil Court must at the time of his election, or appointment, be a qualified voter of Richmond County, the chief judge of said court shall be a practicing attorney at law at least five (6) years immediately preceding his election; Provided further that the chief judge of said court shall be subject

*Judges.*

*Chief judge.*

to the same restrictions as imposed by law upon the Superior Court Judges prohibiting practicing law.

"Section 6. Be it further enacted by the authority aforesaid, that every vacancy in the office of chief judge of said Civil Court, occasioned by death, resignation, retirement, or other cause shall be filled by appointment of the Governor for the unexpired term thereof.

"Section 7. Be it further enacted by the authority aforesaid, that the chief judge of said Civil Court and the associate judge, are hereby clothed with the same powers and authority as is conferred by the Constitution and laws of this State upon a Justice of the peace, judge of superior court and with such additional rights, powers, and jurisdiction as is provided by the terms of this Act; that said chief judge of said Civil Court and the associate judge, shall have the power and authority, under the limitations set out in this Act, to hear, determine, and dispose of all cases and actions, both civil and criminal, of which said court has jurisdiction, and to give judgment and execution therein; to hold court from day to day continuously, if necessary, to the dispatch of the business of said court. The chief judge of said court and the associate judge shall have the same power to preserve order, to compel obedience to their orders, to inflict summary punishment for contempt, to enforce the judgment of their court, as is given by law to the judges of the Superior Courts of this State: provided, however, that said judges shall have no power to impose punishment for contempt exceeding a fine of three hundred ($300.00) dollars and/or thirty (30) days in the county jail. The judges of said Civil Court shall have, in addition to the powers enumerated in this section, all the powers, prerogatives and authority, in matters wherein the subject-matter and the amount involved are not beyond the jurisdiction of said Court, that are conferred upon the judges of the Superior Court, and said powers, prerogatives and authority shall apply to the chief judge of said Civil Court and the associate judge, so far as the same may be applicable, unless inconsistent with the provisions of this Act.

"Section 8. There shall be an associate judge of said

*Vacancy*

*Powers.*

court who shall have the same qualifications as required of the chief judge of said court. The said associate judge shall exercise all the functions, have the same powers and perform the same duties and have the same jurisdiction as the chief judge thereof, except as may be otherwise provided in this Act. The compensation of said associate judge shall be $14,500.00 per annum, to be paid as the other officers of said court are paid; provided that the associate judge shall be prohibited from the practice of law in the Civil Court, Richmond County, Georgia, only. The said associate judge shall be appointed by the Governor within thirty (30) days after this Act is approved or otherwise becomes law and his office shall run concurrent with the term of the office of the chief judge; thereafter he shall be elected in the same manner and at the same time as the chief judge. When a vacancy occurs in the office of associate judge of said Civil Court, occasioned by death, resignation, or other cause, it shall be filled by appointment of the Governor for the unexpired term thereof.

"Section 9. The salary of the chief judge of Civil Court shall be $18,000.00 per annum; the salary of the clerk of said court shall be fixed by the chief judge from time to time at an amount not to exceed $9,720.00 per annum; the clerk of said court shall have the power, by and with the consent of said chief judge of said court, to appoint a chief deputy clerk and the salary of the chief deputy clerk shall be fixed by the chief judge from time to time at an amount not to exceed $7,620.00 per annum, and the clerk of said court shall have the power by and with the consent of the chief judge of said court to appoint six (6) deputy clerks and the salary of each of said deputy clerks shall be fixed by the chief judge from time to time at an amount not to exceed $6,300.00 per annum. The salary of the sheriff of said court shall be fixed by the chief judge from time to time at an amount not to exceed $10,740.00 per annum and the sheriff of said court shall have power by and with the consent of the chief judge of said court to appoint a chief deputy sheriff and the salary of the chief deputy sheriff shall be fixed by the chief judge from time to time at an amount not to exceed $8,400.00 per annum, and eleven (11) deputy sheriffs and the salary of each deputy

sheriff shall be fixed by the chief judge from time to time at an amount not to exceed $7,260.00 per annum. Provided, however, that said chief deputy sheriff, chief deputy clerk, or deputy clerks, or deputy sheriffs shall serve only during such time as both the chief judge and the clerk and/or sheriff may deem their services necessary and to the best interest of the court. Any such deputy clerk or deputy sheriff may be discharged by the chief judge and/or clerk or sheriff at any time, and any such vacancy or vacancies thus created shall be filled in the same manner as such officers were originally appointed under this Act, as amended.

"Section 9A. Be it further enacted by the authority aforesaid, that the chief judge of said civil court and the associate judge shall have the power to appoint and at pleasure to remove two secretaries to serve the judges of said court. Such secretaries shall take all stenographic notes, transcribe the same, required by the judges of said court, and do and perform such other duties as the judges of said court may require in chambers or in court. Said secretaries shall have the same powers and authority and exercise all the functions and be subject to all responsibilities and requirements of a deputy clerk of said court. The salary of the secretaries of said court shall be fixed by said judges from time to time at an amount not to exceed $6,600.00 per annum. The compensation of all officers of said Civil Court shall be paid monthly out of the treasury of Richmond County, Georgia, upon the warrants of the chief judge of said court by the officer or officers charged by law with paying out of money of said county and charged as part of the expenses of said court.

No credit for service shall be granted for any time during which a person was not actually an employee of the Civil Court in and for Richmond County, Georgia, and receive compensation therefor in the position for which such increase is authorized.

"Section 9B. In addition to the personnel which the chief judge may appoint as hereinbefore provided, said judge shall have the power to appoint, and at pleasure to remove, a court reporter, to serve the court and judges thereof,

Such reporter shall report and transcribe all criminal matters required by the judges of said court, and do and perform such other duties as the judges of said court may require in chambers or in court. The salary of the court reporter of said court shall be fixed by the chief judge from time to time in an amount not to exceed $6,000.00 per annum; and shall be paid monthly out of the treasury of Richmond County, Georgia, upon the warrants of the chief judge of said court, by the officer of officers charged by law with paying out the money of the county and charged as part of the court expenses of said court.

"Section 10. The sheriff and the clerk of the Civil Court of Richmond County, Georgia, shall be appointed by the chief judge of said court for a term of office to run concurrently with his own. The sheriff and the clerk of said court shall have authority, with the approval of the chief judge of said court, to name their deputies who shall hold said office at the pleasure of the said sheriff or clerk as the case may be, subject to approval of the chief judge of said court. It is hereby further provided that the chief judge, and associate judge and all of the other officers of the Civil Court of Richmond County, Georgia, now serving their present term of office are hereby confirmed as the chief judge, and associate judge and other officers of said court, to name their deputies who shall hold said office at the pleasure of said sheriff or clerk as the case may be subject to approval of the chief judge of said court. It is hereby further provided that judge and all of the other officers of the Civil Court of Richmond County, Georgia, now serving their present term of office are hereby confirmed as the judge and other officers of said court.

"Section 11. Be it further enacted by the authority aforesaid, that all of the requirements and duties, powers and authority imposed by law upon and conferred upon the clerk of Richmond County Superior Court and the sheriff of Richmond County shall be obligatory upon and shall be vested in the clerk and sheriff of said Civil Court, and the several deputies, respectively and shall be concurrent and coexistent with said clerk of Superior Court and sheriff of Richmond County: Provided, however, that the amount of

*Sheriff, clerk.*

*Same, powers.*

the bond of the clerk of said Civil Court shall be ten thousand ($10,000.00) dollars, and the amount of the bond of the sheriff of said Civil Court shall be ten thousand ($10,000.00) dollars, and the amount of the bond of deputy clerks of said Civil Court shall be one thousand ($1,000.00) dollars, and the amount of the bond of deputy sheriffs of said Civil Court shall be one thousand ($1,000.00) dollars; and all such bonds have as surety thereon a surety company doing business in this State and having an office and authorized to do business in Georgia, and premium of such bonds to be paid out of the county treasury of Richmond County, Georgia.

*Bonds.*

"Section 12. The clerk and deputy clerks of said Civil Court shall have complete power and authority, co-existent and coordinate with the power of the judges of said court, and under the provisions of this Act, to issue any and all warrants, civil and criminal, suits, and garnishments, writs of attachment, distress warrants, dispossessory warrants, warrants against intruders, warrants against tenant holding over, possessory warrants, bail trover, and summary processes and writs which are issuable as a matter of right, to accept and approve bonds and to discharge any and all other functions, which under the laws of this State are performable by a justice of the peace. And all deputy clerks, and deputy sheriffs, if and when appointed under the terms of this Act, shall exercise all the functions and be subject to all the responsibilities and requirements of the clerk and sheriff of said court.

*Clerk, p...*

"Section 13. Said Civil Court shall be a court of record, and shall have a seal, and minutes, records, and other books and files that are required by law to be kept by the Superior Court, so far as the jurisdiction of said Civil Court and render necessary, and said records shall be kept in and for said Civil Court, and said Civil Court is hereby declared to be a court of record for all purposes of jurisdiction, including, but not restricted to (a) motions for summary judgment; (b) all matters arising under the Uniform Criminal Extradition Act, approved February 21, 1951 (Ga. L. 1951, p. 726), as amended; (c) Uniform Act for Out of State Paroles Supervision, approved February 17, 1960 (Ga. L.

*Court of...*

2418   LOCAL AND SPECIAL ACTS AND RESOLUTIONS, VOL. II

1960, p. 405), as amended; and (e) Georgia Civil Practice Act, as amended, provided that the clerk of said Civil Court shall preserve in suitable files all original papers in each case, which shall not be removed from said clerk's office without the permission of the judges of said court, and proper receipt being given to said clerk or deputy clerks of said court.

*Court of inquiry.*

"Section 14. Be it further enacted by the authority aforesaid, that with the exception of the judges of Richmond Superior Court and the judge of the State Court of Richmond County, the said Civil Court shall have exclusive jurisdiction to sit as a court of inquiry to examine into accusations against persons arrested on warrants for offenses committed within the limits of said County of Richmond.

*Jurisdiction.*

"Section 15. All warrants, summary processes, writs, processes, garnishments, attachments, and suits issuing out of said Civil Court, in which the principal sum claimed to be due or the value of the property in dispute does not exceed ten thousand ($10,000.00) dollars, shall be returnable to said Civil Court in the same manner and under the same rules as such writs are required to be returned to the Superior Court.

*Practice.*

"Section 16. The general laws of this State in regard to commencement of actions in the superior courts, and defenses thereto or in defense of whatever nature, the pleadings, the method of procedure and practice therein and in regard to the examination of the parties to suits or witnesses, by interrogatories or under subpoena, witnesses and their attendance, continuances, charge of the court, granting of new trials, and other matters of a judicial nature within the jurisdiction of said Civil Court, shall be applicable to said Civil Court, except as may be otherwise provided in this Act.

*Same.*

"Section 17. Suits and garnishments in said Civil Court shall in all respects be conformable to the code of procedure in the superior courts; process of suit shall be annexed by the clerk of said court, and shall be served by the sheriff of said court or his lawful deputies; all executions, warrants,

GEORGIA LAWS 1974 SESSION

writs and summary processes of any kind issuing from said Civil Court shall be issued by any of the judges thereof, or in any one of their names by the clerk or deputy clerks, and be directed to the sheriff and his lawful deputies of said Civil Court and to all and singular the sheriffs and deputy sheriffs, and lawful constables of this State, and shall be executed by the sheriff or his deputy sheriff, or lawful constable or other peace officer, as now provided by law for such proceedings from the superior courts, or justice of the peace courts of this State.

*Terms.*

"Section 18. The terms of said Civil Court shall be held monthly, on the fourth Monday in each month; that suits, garnishments and attachments shall be filed in the clerk's office of said court at least forty (40) days before the first day of the term to which they are returnable; however, whenever said day shall fall on a Saturday or a Sunday, it shall be held to fall on the first Monday following said Saturday or Sunday, and shall be served at least thirty (30) days before the first day of said term. The terms of said court shall end at twelve o'clock noon, on the fourth Monday in each month for the preceding term. The right of opening default shall be governed by the same rules of law now in force as to opening defaults in the superior courts of this State, whether judgment has been rendered in said case or not.

*Practice.*

"Section 19. In all cases in said court in which the principal sum claimed or the value of the property in controversy does not exceed five hundred ($500.00) dollars, the rules of pleading and practice provided for in sections 16, 16 and 17 hereof shall not be applicable, and it shall not be necessary to paragraph either the complaint or answer; but no suit or proceeding, or answer thereto, shall be accepted or filed by the clerk of said court unless a substantial statement of the claim, or matters of defense, of whatsoever character, be first reduced to writing, and be signed personally by the party plaintiff or defendant, or by an attorney at law. No motion or special plea shall be required, but every defense in point of law or of fact may be taken advantage of in the answer; provided, that if the plaintiff shall verify his claim, the defendant shall be re-

quired to verify his answer. In furtherance of justice, the judges of said court shall permit any claim, suit, process, pleading, or record to be amended in form or in substance, or material supplemental matter to be set forth in an amended written pleading, and shall disregard any error or defect which does not affect the substantial rights of the parties but no amendment presenting a new and distinct cause of action or new party or parties shall be allowed.

*Trial.*

"Section 20. After the appearance day, any case may be assigned for trial by any of the judges of said court on any day after giving reasonable notice to all parties, unless continued for good cause shown, and in conformance with such rules and regulations of procedure now promulgated and of force, or which hereafter may be adopted in said court. If a case so placed on the trial calendar is not disposed of within ninety days after the appearance day to which it is brought, it may be dismissed by any of the judges in the exercise of sound discretion, without prejudice to anyone, and costs taxed against the delinquent party.

*Jury trial.*

"Section 21. Be it further enacted that every case in said Civil Court shall be tried by any judge thereof without a jury, unless a written demand for a trial by jury is filed in said court by the plaintiff, or his attorney, or by any other party seeking affirmative relief at the time such action or proceeding is instituted, or by the defendant, or his attorney, on or before the day and time which he is to appear in court in response to the proceedings against him. Upon the failure of a party to demand a trial by jury, he shall be held to have waived such right.

*Jury.*

"Section 22. Be it further enacted by the authority aforesaid, that all laws with reference to the drawing, selecting and summoning of traverse jurors in the superior court shall apply to said Civil Court, under the limitation provided by the terms of this Act.

*Same.*

"Section 23. Be it further enacted by the authority aforesaid, that all laws with reference to the qualifications,

relationship, impaneling, challenging, and compensation of jurors, now or hereafter in force, applicable to the Superior Courts of Richmond County, Georgia, shall apply to and be observed in said Civil Court except as where in conflict with the terms of this Act.

*Same.*

"Section 24. Be it further enacted by the authority aforesaid, that all jury trials in said court shall be by a jury of six. From said panel of traverse jurors drawn and summoned in accordance with the provisions of this Act, any of the judges of said Civil Court shall cause to be made up at least one panel of jurors containing twelve jurors, and as many other jurors as may in his discretion be necessary, and all cases and issues to be tried by jury at such term of said Civil Court shall be tried by a jury stricken from a panel of jurors thus drawn, plaintiff and defendant each being entitled to three preemptory challenges. In the event that said jurors should be reduced below twelve for any cause, or when challenge or from any other cause there shall not be a sufficient number of persons in attendance to complete the panel of jurors, the judge shall draw the tales jurors from the jury box as now provided by law, and order the sheriff to summon the jurors so drawn; and when the sheriff or his deputy shall be disqualified to summon talesmen, they may be summoned by the sheriff of Richmond County or his deputies, or such other person as the judge may appoint.

*Sales.*

"Section 25. All sales of personal property levied upon under process of Civil Court, or any other process, summary processes, or any other execution, executed by said Civil Court officers, shall take place at the courthouse door during the legal hours of sale, at public outcry, on the Monday next following ten days advertisement by notice posted before the courthouse door, describing the property to be sold, the place and hour of sale, the name and residence of the owner of the property, and the style of the case in which the execution issued. Such sales are to be conducted by the sheriff of said court or his deputy; provided, that sales of perishable property, and sales on the premises may be made as provided by law, and provided, further, that in all cases where real estate is levied upon under a process from Civil

Court, or any other court, the subsequent proceedings shall conform to the laws governing the sale of real estate, save and except that all advertisement and sale of real estate shall be conducted by the sheriff of said court or his deputy.

"Section 26. Be it further enacted, that the chief judge of the Civil Court of Richmond County, Georgia, and the associate judge of said court shall have the same authority as the judge of the superior court to order a case reported, and they may direct the case reported when either party or counsel requests it, or when in the discretion of the judge the ends of justice require that the case may be reported. Whenever a case is reported in said court, either by agreement of parties or counsel, or by discretion of the court under the rule, the costs of such reporting shall be taxed equally against the parties to the case and shall be assessed as costs in the case under the same rules as prevail in the superior court, save that the charge for such reporting shall be 20¢ per hundred words in writing it out. If either party or his counsel objects to the reporting of the case, the party so objecting shall not be charged with any expense of reporting the case unless the judge on preliminary investigation shall determine that the case is one that should be reported and shall direct it reported under the rule.

"Section 27. (a) In all cases in said court wherein the principal sum claimed or the value of property in controversy does not exceed five hundred ($500.00) dollars, whether tried by jury, or tried by the judge without a jury, the judgment of said court shall be conclusive, and no new trial shall be granted, provided, nevertheless, said case may be carried to the superior court by certiorari as provided by the general laws in reference to the writ of certiorari.

"(b) In all cases in said court tried by any of the judges thereof without a jury or tried by jury, in which the principal sum claimed or the value of the property in controversy exceeds five hundred ($500.00) dollars, upon announcement of the judgment by the court, or upon rendition of the verdict by the jury, any party or his counsel may make a written motion for a new trial within thirty (30) days

after judgment is entered in said case. Unless said motion for new trial is made as herein provided, the parties shall be held to have waived their right to move for a new trial, except upon the grounds on which extraordinary motions for new trial may be made. Said motion may be heard at such time within sixty (60) days after the making of said motion as the court in its discretion may set for a hearing; provided, nevertheless, that upon the disposition of a motion for a new trial by said Civil Court, any party, plaintiff or defendant, or claimant therein, may certiorari said case to the Superior Court of Richmond County under the general law of the writ of certiorari. Provided, however, that in the event the case is tried before a jury, then in this event the right of certiorari will not lie and the appeal shall be to the Court of Appeals or Supreme Court pursuant to jurisdictional requirement.

"(c) From any final judgment of the said Civil Court, an appeal shall lie to the Court of Appeals of Georgia, under the same rules that apply to appeals from the Superior Courts of this State.

"Section 28. Be it further enacted by the authority aforesaid, that all judgments obtained in said court shall be liens upon property belonging to the defendant or defendants, to the same extent and upon the same conditions as judgments of the Superior Courts of this State.

"Section 29. From and after the passage of this Act, it shall be necessary for the plaintiff, before or at the time of instituting any civil proceeding in said court to deposit with the clerk of said court the sum of six ($6.00) dollars upon the costs that will accrue therein; provided, nevertheless, if any plaintiff who may desire to institute any action in said court is unable from poverty to make the said costs deposits, he may make an affidavit to that effect and file the same with the proceeding sought to be sued out or instituted; whereupon it shall be the duty of the officers of said court to proceed with said matter as though said deposit had been paid. Provided, nevertheless, that the clerk of said court shall not be required to file any proceedings in which the plaintiff is a non-resident and the amount involved, or

*Reported cases.*

*Certiorari.*

*New trials.*

*Appeals.*

*Liens.*

*Costs.*

the property in controversy does not exceed five hundred ($500.00) dollars, until six ($6.00) dollars shall have been deposited with the clerk, of the amount involved, or the property in controversy, exceeds five hundred ($500.00) dollars, until twelve ($12.00) dollars, shall have been deposited with the clerk, on account of costs. The court at any stage of such cause, on motion of the clerk, shall require such additional deposit as the case may require. If the case be withdrawn or dismissed, or if, upon final judgment, the deposit exceeds the amount of the cost taxable by law, the clerk shall refund to the depositor the excess.

"Section 30. Be it further enacted by the authority aforesaid, that it shall be the duty of the judges of said court to see to it that the officers of their court are diligent in the collection of costs and shall adopt such other measures and rules as will insure the payment of costs by the party or parties therefor.

"Section 31. Be it further enacted by the authority aforesaid, and it is hereby enacted by the authority of the same, that on and after passage of this Act, no officer of any justice court whose district lies in whole or in part within the limits of the city of Augusta, Georgia, shall have authority to issue or serve any civil, quasi-criminal paper, process, or writ of any character, against any person, firm, or corporation residing within the corporate limits of Richmond County, Georgia, without regard to the location of the court from which said paper or process issued, nor shall any justice of the peace issue any criminal warrant for any misdemeanor or crime committed within the limits of the City of Augusta, Georgia.

"Section 32. Be it further enacted by the authority aforesaid, that in the event any justice of the peace whose district adjoins the City of Augusta is disqualified from presiding in a particular case or refuses to serve in such case, or if such justice of the peace is sued and there is no justice in his district who is qualified to act, said Civil Court of Richmond County, Georgia, shall have jurisdiction of such case concurrent with justice courts in other adjoining districts.

"Section 33. Be it further enacted by the authority aforesaid:

"(a) That all cases, civil or criminal, pending and undisposed of, from and after the passage of this Act, in justice courts lying within the city limits of Augusta, Georgia, shall be and they are hereby transferred to said Civil Court for trial and disposition therein. All final and other processes in the hands of officers of said Civil Court and other processes returned to said Civil Court and the judges and other officers of said Civil Court shall have power and authority to issue and enforce in the name of said Civil Court any and all processes in any case from said justice courts necessary to the final disposition of the same, which from any cause have not been issued and enforced by the officers of said justice courts. All fi. fas, and final processes not satisfied in the hands of the officers of said justice courts, from and after passage of this Act shall be levied by the officers of said Civil Court. All records, books, and papers in cases disposed of and on file in said justice courts shall be filed and deposited with the clerk of said Civil Court, and all property of parties to action in said justice courts in the legal custody of the said court shall be delivered to the sheriff of said Civil Court. It is hereby made the duty of said justices of the peace and/or constables to which this Act is applicable to comply with the provisions of this Section; and any justice of the peace and/or constable who shall fail to transmit such suits, papers and documents, or to return such final or other processes, or to deliver the books and records or property in the custody of the courts, within three days after written demand for such transmission or delivery has been made by the clerk of said Civil Court or any party at interest, shall be held in contempt of said Civil Court, and be punished as provided in cases of contempt in the Superior Courts of the State of Georgia. The officers of said justice courts in this Section referred to shall be entitled to all uncollected costs which have accrued in the cases in their respective courts so transferred up to the passage of this Act, upon the collection of the same by the officers of said Civil Court.

"(b) Be it further enacted by the authority aforesaid, that the provisions of the preceding paragraph shall apply to

2426 LOCAL AND SPECIAL ACTS AND RESOLUTIONS, VOL. II

the justices of the peace and justice courts whose districts are within the city limits of Augusta, Georgia, in all cases, civil or criminal, jurisdiction of which will devolve upon said Civil Court pending and undisposed of from and after the passage of this Act, and none other:

"Section 34. The Board of Commissioners of Richmond County, Georgia, shall provide a suitable and convenient place for holding of said Civil Court of Richmond County, Georgia; and shall provide all necessary books, stationery, and filing cases for keeping the dockets, files and records of said court, and other things necessary to the conduct of the business of said court.

"Section 35. Be it further enacted by the authority aforesaid, that a complete set of the published reports of the Supreme Court and the Court of Appeals of Georgia, and the Acts of the General Assembly of Georgia commending with Acts of 1910 and the Code of 1933, Annotated, shall be furnished by the State Librarian to the clerk of said court for the use of said court.

"Section 36. The scale of costs to be collected by the officers of the Civil Court of Richmond County, Georgia, shall be graduated and divided according to classifications, as follows:

"(a) In all cases the costs to be charged and collected by the officers of said court shall be as set out in the following schedule:

*Courtroom.*
*Law books.*
*Costs.*

| | |
|---|---|
| Each original summons | 2.00 |
| Each copy of summons | 2.00 |
| Filing papers in any case | 1.00 |
| Seal | .25 |
| Affidavit and bond to obtain attachment and issuing and filing same | 3.00 |
| Entering judgment in each case | 1.00 |
| Trial of each case when same is litigated | 1.50 |

GEORGIA LAWS 1974 SESSION

| | |
|---|---|
| Docketing each case | 1.00 |
| Each witness sworn | .50 |
| Issuing each execution | 1.00 |
| Making out interrogatories and certifying the same | 3.50 |
| Making out recognizances and returning same to court | 1.00 |
| Each subpoena for witness | 2.00 |
| Issuing each distress warrant and filing same | 2.00 |
| Each affidavit when a case is pending | .75 |
| Answering every writ of certiorari to Superior Court | 5.00 |
| Presiding at trial of forcible entry and detainer | 4.00 |
| Presiding at trial of right-of-way case | 3.00 |
| Issuing rule to establish lost papers | 2.00 |
| Trying the same | 1.00 |
| Presiding at trial of nuisance case | 2.00 |
| Witnessing any paper | .75 |
| Affidavit and bond to obtain garnishment and filing | 2.50 |
| Issuing summons of garnishment | 1.00 |
| Each additional copy of summons | .75 |
| Settling case before judgment | 1.00 |
| Claim affidavit and bond | 1.50 |
| Trying same | 1.00 |
| Certifying transcript | 1.50 |

Issuing order to sell perishable property ........ 2.00
Each lien foreclosure and docketing same ........ 3.00
Each order issued by the court ........ 1.50
Each case tried by jury ........ 2.00
Issuing commission to take interrogatories ........ 4.00
Backing fieri facias ........ .75
Rule nisi against officer ........ 1.00
Trying the same ........ .75
Judgment on the same ........ .75
Each criminal warrant issued ........ 2.50
Serving summons of attachment ........ 3.00
Each return of officer ........ 2.00
Serving each copy of summons ........ 1.00
Summoning each witness ........ 1.00
Attending court, for each judgment rendered sheriff's cost ........ 2.00
Levying fieri facias ........ 2.50
Settling fieri facias when property not sold ........ 1.50
Returning nulla bona ........ 1.00
Collecting executions issued by coroners ........ 1.50
Collecting executions issued by tax collector ........ 1.50
Keeping or storage of any motor vehicle, not to exceed per day ........ 2.00
Keeping each dog, per day ........ .50
Keeping horse, mule, ox or ass, per day ........ 1.00

Keeping each head of meat cattle, per day ........ .50
Keeping each head of sheep, goats or hogs ........ .50
Keeping or storage of household furniture or appliances, not to exceed per day ........ 2.00
All sales made by sheriff, amount on sales commission ........ 6-1/4%
Serving rule to establish lost paper ........ 2.00
Every additional copy ........ .75
Serving court ........ 1.00
Each additional copy ........ .75
Following property out of county, going and returning per mile ........ .10
Levying each distress warrant ........ 5.00
Each advertisement ........ 3.00
Taking bond in civil cases ........ 3.00
Taking bond in criminal cases ........ 2.50
Serving summons of garnishment ........ 1.00
Each additional summons ........ 1.00
For hauling or drayage in handling of any property seized by virtue of process from court, not to exceed $6.00 per hour for use of any vehicle used in hauling or drayage, and $2.00 per hour for labor. For towing or wrecker service for motor vehicle seized under legal process, not to exceed $2.00 per mile, minimum charge for any vehicle seized within corporate limits, City of Augusta, not to exceed ........ 5.00

2430    LOCAL AND SPECIAL ACTS AND RESOLUTIONS, VOL. II

Old records,
disposition.

(b) The costs to be taxed in said court in possessory warrant cases, criminal warrants, peace warrants, search warrants and bail trovers shall be the same as those fixed by law.

(c) In dispossessory warrant cases and proceedings to eject intruders, the costs shall be $3.00 for the clerk for issuing and $3.00 for the sheriff for serving the warrant, and other costs shall be the same as justice of the peace court costs. Said $6.00 shall be deposited with the clerk at time of filing and issuing of said warrant.

(d) In all other cases not herein specifically provided for, the costs to be taxed by the clerk shall be the same as provided by law. The sheriff's costs for advertising personal property shall be $3.00.

(e) All costs collected in said court by the officers thereof shall be paid into the treasury of Richmond County monthly on the first, or within ten days thereof, of each month by the clerk to be applied to the expenses of operating said court.

"Section 37. Be it enacted by the authority aforesaid, that from and after the passage of this Act, the clerk of said court shall be and is hereby authorized from time to time upon direction of the chief judge of said court, to destroy or dispose of old records of said court which have served their usefulness and which in the opinion of said chief judge and clerk, have no further value to the court, or to the public, but are merely occupying valuable filing space. The authority hereby granted shall include all the books, papers, and documents of said court now in the possession of said clerk, or which may hereafter come into his possession, of any nature and kind whatsoever, which in the case of criminal warrants, are at least five years old, all dispossessory warrants, distress warrants, peace warrants in which no defensive pleadings have been filed, and all justice of the peace court records and papers which by law have been placed in the possession of said clerk, and which, as aforesaid, in the opinion of the chief judge of said court have served their usefulness and are of no longer

---

GEORGIA LAWS 1974 SESSION

any value to anyone. Nothing in this Act shall authorize the destruction or disposal of the minutes, writ books, the dockets or the indices, or books of general entry, journals, or cash journals of the Civil Court, Richmond County, Georgia, and such records may be microfilmed and accepted in lieu of original records within the discretion of the chief judge of said court.

"Section 38. Be it further enacted by the authority aforesaid, that hereto attached is a copy of the advertisement of the intention to apply for this Act that ran in the legal gazette for Richmond County, Georgia, in which the sheriff's advertisement ran, which is by reference incorporated herein and made a part of this Act.

"Section 39. Be it further enacted by the authority aforesaid, that if any section or provision of this Act shall be held unconstitutional, or invalid, by any court of competent jurisdiction, the corresponding original Acts hereby sought to be changed shall ipso facto and pro tanto stand reenacted and restored, and it shall not affect the validity and constitutionality of the remainder of this Act.

Severa

"Section 40. Be it further enacted by the authority aforesaid, that all laws and parts of laws in conflict herewith be, and the same are, hereby repealed."    Repeal

Section 2. This Act shall become effective upon its approval by the Governor or upon its becoming law without his approval.    Effecti

Section 3. All laws and parts of laws in conflict with this Act are hereby repealed.

Notice of Intention to Introduce Local Legislation.

Pursuant to provision of Article III, Section VII, Paragraph XV, of the Constitution of Georgia 1945, Annotated Code of Georgia 1933, Code section 2-1915, notice is hereby given of intention to apply at the next regular session of the General Assembly of the State of Georgia, which will convene on the second Monday in January 1973, for the enact-

2432    LOCAL AND SPECIAL ACTS AND RESOLUTIONS, VOL. II

ment of the local legislation to amend the Act creating the Civil Court, Richmond County, Georgia, approved August 28, 1931, page 270, as heretofore amended. Said Acts appear in Ga. L. 1966, p. 2144 through 2167, and Ga. L. 1966, p. 3312 through 3315 approved, March 7, 1966, an Act approved April 13, 1967, Ga. L. 1967, p. 3044-3050, and an Act approved March 24, 1970, Ga. L. 1970, p. 3436-3452, Act approved March 31, 1971, Ga. L. 1971, p. 2745-2760, Act approved April 8, 1972, Ga. L. 1972, p. 365-366 and Act approved April 17, 1973, Ga. L. p. 2744-2750.

This 21st day of December, 1973.

/s/ L. W. Cooper,
Chief Judge
Civil Court of Richmond
County, Georgia

Sworn to and subscribed before me, this 21st day of December, 1973.

(Seal).

/s/ Virginia Bowling
Notary Public
Richmond County, Georgia
My Commission expires Nov. 28, 1976

Georgia, Fulton County.

Personally appeared before me, the undersigned authority, duly authorized to administer oaths, Bill Sams who, on oath, deposes and says that he is Representative from the 83rd District, and that the attached copy of Notice of Intention to Introduce Local Legislation was published in the Augusta Herald which is the official organ of Richmond County, on the following dates: December 28, 1973, January 4, & 11, 1974.

/s/ Bill Sams
Representative,
83rd District

Sworn to and subscribed before me, this 5th day of February, 1974.

---

GEORGIA LAWS 1974 SESSION

/s/ Susan Gordon
Notary Public, Georgia State at Large.
My Commission expires Dec. 18, 1976.
(Seal).

Approved March 21, 1974.

## DAWSON COUNTY—SALARY OF SUPERIOR COURT DEPUTY CLERK AND ORDINARY CHANGED.

No. 883 (House Bill No. 1874).

An Act to amend an Act placing the clerk of the superior, court and ordinary of Dawson County upon an annual salary, approved February 27, 1969 (Ga. L. 1969, p. 2110), as amended by an Act approved April 8, 1972 (Ga. L. 1972, p. 3515), so as to change the compensation of the ordinary and the deputy clerk of the superior court; to provide an effective date; to repeal conflicting laws; and for other purposes.

Be it enacted by the General Assembly of Georgia:

**Section 1.** An Act placing the clerk of the superior court and ordinary of Dawson County upon an annual salary, approved February 27, 1969 (Ga. L. 1969, p. 2110), as amended by an Act approved April 8, 1972 (Ga. L. 1972, p. 3515), is hereby amended by striking from section 2A the following:

"twelve hundred dollars ($1,200.00)",

and substituting in lieu thereof the following:

"$2,400",

so that when so amended, section 2A shall read as follows:

"Section 2A. There is hereby created an office in Dawson County to be known as deputy clerk of the superior

(l) To confer with and assist all other elected or appointed officials of Richmond County, and all departments, such as Augusta-Richmond County health department, the Augusta-Richmond County Department of Family and Children Services, whose missions are not under the direct control and supervision of the Commission, but who are dependent upon the appropriations of the Commission for their continued operation;

(m) To submit to the Mayor and Commission at the end of each fiscal year a complete report on the finances and administrative activities of Augusta-Richmond County for the preceding year;

(n) To see that all legislation, programs, regulations or plans promulgated and required by the state or federal government are duly carried out and complied with in accordance with such legislation, programs, regulations or plans;

(o) To perform such other duties as may be required of him by the Mayor and Commission.

### Sec. 1-2-37. Examination of departments' books, records.

The Administrator for Augusta-Richmond County shall have at all times the authority to examine all books and papers of each department of Augusta-Richmond County.

### Sec. 1-2-38. Duties regarding procurement; delegation to subordinates.

Subject to rules established by the Mayor and Commission, the Administrator for Augusta-Richmond County shall authorize all purchases for Augusta-Richmond County, subject to the laws requiring advertisement and bids. He shall supervise the disbursement of all Augusta-Richmond County funds, and shall render such reports as may be required by the Commission. The Administrator for Augusta-Richmond County may delegate purely administrative duties to subordinates in Augusta-Richmond County government whose work the Administrator for Augusta-Richmond County shall supervise and direct; however, the

designation or assignment of duties to subordinates shall not relieve the Administrator for Augusta-Richmond County from his responsibilities for administration of Augusta-Richmond County affairs.

### Sec. 1-2-39. Political activities.

The Administrator for Augusta-Richmond County shall not engage in or be concerned with any partisan politics or any political campaign. He shall not contribute to any campaign fund or solicit funds for political purposes from any other person. He shall not appoint any relative as an employee of Augusta-Richmond County unless such relative shall qualify and become eligible for appointment under the rules of the Commission and be recommended by the Commission.

### Sec. 1-2-40. To devote full time to duties of office.

The Administrator for Augusta-Richmond County shall devote his entire time to the duties of his office and shall maintain his office at the courthouse or municipal building.

### Sec. 1-2-41. General administrative duties.

(a) As administrative officer, it shall be the duty of the Administrator for Augusta-Richmond County to conduct, supervise and administer all Augusta-Richmond County affairs, subject only to the general law, to rules prescribed by the Mayor and Commission, and subject to the right of the Mayor and Commission to review, repeal or modify any action of the Administrator for Augusta-Richmond County which is contrary to the general law or such rules, by a vote of a majority of the Commission at any subsequent, regular or called meeting, when such vote thus reviewing, repealing or modifying the action of the Administrator for Augusta-Richmond County shall be entered in writing on the minutes of the Commission.

(b) The Administrator will assemble and provide necessary documentation for the Mayor and Clerk of the Commission to prepare the agenda for all Commission meetings.



EXHIBIT
B

*Augusta*

GEORGIA

# PERSONNEL POLICY

# &

# PROCEDURES MANUAL



Personal gain may result not only in cases where an employee or relative has a significant ownership in a firm with which Augusta, Georgia does business, but also when an employee or relative receives any kickback, bribe, substantial gift, or special consideration as a result of any transaction or business dealings involving Augusta, Georgia.

## Section 800.024  Outside Employment

An employee may hold a job with another organization as long as he or she satisfactorily performs his or her job responsibilities with Augusta, Georgia. All employees will be judged by the same performance standards and will be subject to Augusta, Georgia's scheduling demands, regardless of any existing outside work requirements.

All outside employment must be approved in advance by the requesting employee's Department Director or Administrator.  The request must include a description of the business for which the employee plans to work and the hours the employee plans to work.

If Augusta, Georgia determines that an employee's outside work interferes with performance or the ability to meet the requirements of Augusta, Georgia, as they are modified from time to time, the employee may be asked to terminate the outside employment if he or she wishes to remain employed with Augusta, Georgia.  If the employee's performance does not improve and/or the employee refuses to cease performing outside employment, the employee may be subject to discipline up to and including termination.  Outside employment will present a conflict of interest if it has an adverse impact on Augusta, Georgia.  Outside employment shall not occur during the employee's regular or assigned working hours unless the employee is either on vacation or compensatory leave.

## Section 800.025  Political Activities

A. **Prohibited Activities during Working Hours.**  An Employee shall be subject to discipline up to and including immediate dismissal for violation of these provisions –

    1)  No Employee of Augusta, Georgia shall, while on duty -
        a)  Request or solicit contributions or anything of value for any political candidate or cause;
        b)  participate in any political campaign by speaking in favor of any candidate or cause;
        c)  distribute literature;
        d)  picket or demonstrate on behalf of or in opposition to any political candidate or cause;
        e)  make telephone calls in support of any candidate or cause; or
        f)  organize, plan, or in any other way participate in the administration or carrying on of any political campaign.

    2)  No employee or volunteer of Augusta, Georgia shall, while on duty, while in the uniform of Augusta, Georgia, or while in or operating any Augusta, Georgia vehicle display any badge, button, sign or sticker promoting or opposing any political cause or candidate.

a) From stating any opinion regarding any political issue or cause in ordinary conversation during working hours providing that such a conversation does not interfere with the Employee's assigned job duties and is not repeated numerous times so as to become campaigning rather than casual ordinary conversation.

b) From supporting any political cause or candidate during non-working hours.

**B. Coercion/Intimidation of Public Employees.** No officer or employee of Augusta, Georgia shall use his or her public office or employment for the purpose of or with the effect of –

1. Coercing or intimidating any Augusta, Georgia employee with respect to contributing to, opposing, promoting, or refraining from contributing to, opposing or promoting any political cause of or candidate.

2. Obtaining a benefit as a result of any political activity by intentionally committing an unauthorized act under color of law or intentionally refraining from performing a duty imposed upon him or her by law.

**C. Illegal Political Activities.** No officer or employee of Augusta, Georgia shall engage in any political activity that is prohibited under federal or state law. Any person engaging in such an activity shall be subject to disciplinary action, up to and including dismissal. The following list of activities is not exhaustive and is included for illustrative purposes only. Any illegal activity which is prohibited by federal or state law but which fails to appear on this list is hereby incorporated by reference. No officer or employee shall –

1. Engage in any of the following activities within 150 feet of a polling place:
   a) Electioneering;
   b) Circulating cards or handbills;
   c) Soliciting signatures;
   d) Interfering with voting or the administration of the polling place; or
   e) Conducting an exit or public opinion poll.

2. Obstruct or prevent access to a polling place.

3. Remove a ballot from a polling place or solicit a voter to show his or her ballot.

4. Attempt to intimidate, influence, or bribe a voter by menace, force, threat, or corrupt means.

5. Directly or indirectly offer a bribe or reward to induce a voter to vote for or against a person or proposition.

6. Attempt to influence a voter to vote or not to vote, directly or indirectly, by menace or corrupt means.

D. **Conflicts of Interest.** If any Augusta, Georgia employee seeks or accepts appointment or election to any public office that when the seeking or holding of such office would be incompatible or would substantially interfere with the discharge of his or her duties as an Employee of Augusta, Georgia, such employee shall request a leave of absence without pay while seeking such office and resign employment with Augusta, Georgia if such office is obtained.

## Section 800.026  Employee Separation and Termination

**Types of Termination**

1) **Job Abandonment.** An Employee not on an authorized leave of absence who, without valid reason, fails to report for work for three (3) consecutive days will be considered to have voluntarily resigned from the service of Augusta, Georgia.

2) **Voluntary Resignation.** A voluntary resignation for any reason other than formal retirement. An Employee wanting to leave August, Georgia in good standing shall provide a written resignation to his or her immediate supervisor at least fourteen (14) calendar days prior to the effective date of resignation. The resignation letter should include the reason for leaving as well as the proposed effective date. Two weeks' notice is understood to mean that the resigning Employee will be available for work during this time. Exceptions to the time limit requirement may be granted by the Department Director.

3) **Involuntary discharge or dismissal.** Termination of a regular employee by Augusta, Georgia for just cause and shall be governed by the provisions of these policies and procedures as hereinafter set forth.

4) **Probationary Termination.** Discharge of an employee for any reason or no reason so long as such discharge does not violate any federal or state law during the established probationary period.

5) **Layoff/Reduction in Force (RIF).** Involuntary separation of an employee by Augusta, Georgia for shortage of funds or work, abolishment of the position, material changes in the duties or organization, or related reasons beyond the employee's control which do not reflect dissatisfaction with the service of the employee. The duties previously performed by any laid-off employee may be reassigned to other employees holding positions in appropriate classes.

6) **Loss of Job Requirements.** Any employee who fails to obtain or ceases to hold a special license or other special requirement necessary to perform the job he/she performs or is intended to perform shall be laid off until such license or special requirement is obtained. The license or special requirement shall be obtained within the specified period of time designated by the employee's Department Director or the employee shall be dismissed.

7) **Disability Retirement.** An employee will notify his or her immediate Supervisor of resignation due to disability. A disability is an inability to perform the functions of a job due to injury, illness, disease, or a medical condition that makes the employee's continuance on the job a danger to himself/herself or to others. Medical documentation from a licensed doctor or medical facility stating the Employee is

## CERTIFICATE OF SERVICE

This is to certify that on the _7th_ day of February, 2017, the foregoing was filed

with the Clerk of Court in accordance with ECF rules using the CM/ECF system and was served

electronically upon counsel for the other parties and by placing a copy of same in the United States

Mail with adequate postage thereon, properly addressed to:

Andrew G. MacKenzie, Esq.<br>
Jody M. Smitherman, Esq.<br>
Law Department<br>
Augusta-Richmond County, Georgia<br>
535 Telfair Street, Bldg. 3000<br>
Augusta, GA  30901

/s/ John B. Long
JOHN B. LONG, ESQ.
Georgia State Bar No. 457200
Attorney for Plaintiff

15